IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LYDIA MALLON | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO.  11-326 |
| TROVER SOLUTIONS, INC. ET AL. | : | |

SURRICK, J.                                                    JUNE  4 , 2014

## MEMORANDUM

Presently before the Court is the Joint Motion to Dismiss or, Alternatively, for Summary

Judgment of Defendants Independence Blue Cross, QCC, and Trover Solutions, Inc.  (ECF No.

20).  For the following reasons, Defendants' Motion will be granted.

## I.    BACKGROUND

### A.    Factual History[1]

Plaintiff Lydia Mallon is a participant in a multi-employer health and welfare plan (the

"Plan") which provides her with medical benefits.  (Sec. Am. Compl. ¶ 2, ECF No. 19.)

Defendant QCC Insurance Company ("QCC"), a subsidiary of Independence Blue Cross

("IBX"), is the Claims Administrator for the Plan.  (*Id*. at ¶¶ 2, 17, 18.)  Defendant Trover

Solutions, Inc., d/b/a Healthcare Recoveries ("Trover") is a third-party vendor engaged in the

business of asserting and collecting subrogation claims on behalf of QCC.  (*Id*. at ¶¶ 2, 10.)

Plaintiff was injured in a car accident in 2006 and received benefits from the Plan to pay

for some of her medical bills.  (*Id*. at ¶ 2; Pl.'s Resp. 4, ECF No. 22.)  Following the accident,

---

[1] Pursuant to Federal Rule of Civil Procedure 12(b)(6), "'we accept all factual allegations
as true [and] construe the complaint in the light most favorable to the plaintiff.'"  *DelRio-Mocci
v. Connolly Props., Inc*., 672 F.3d 241, 245 (3d Cir. 2012) (quoting *Warren Gen. Hosp. v.
Amgen, Inc*., 643 F.3d 77, 84 (3d Cir. 2011)).

Plaintiff initiated a lawsuit against the driver of the other motor vehicle.  (Sec. Am. Compl.  ¶ 2.)
On or about October 11, 2007, during the pendency of that action, Trover sent Plaintiff's
attorney, Steven Gillman, Esquire ("Gillman"), a letter.  (*Id*.; Oct. 11, 2007 Trover Ltr., Defs.'
Mot. App. 11, ECF No. 20.)  The letter stated that the Plan was self-funded and governed by the
Employee Retirement Income Security Act of 1974 ("ERISA").  (Oct. 11 Trover Ltr.)  The letter
explained that the Plan had the right "to be reimbursed by [Plaintiff] for benefits it has provided
in the event that any compensation is received from another source."  (*Id.*)

Gillman responded to Trover's letter by requesting a consolidated statement of benefits
paid by the Plan on behalf of Plaintiff.  (Defs.' Mot. App. 12.)  Gillman also requested a
complete copy of the Summary Plan Description and the Form 5500 filed with the Internal
Revenue Service for the last fiscal year as proof of the Plan's right of recovery.  (*Id*.; *see* Sec.
Am. Compl. ¶ 37 n.7.)  Gillman stated that "[i]f it is satisfactorily proven that the [Plan] has a
valid right of recovery, this office will protect the [P]lan's lien from any settlement or verdict
entered in [Plaintiff's] case less the [P]lan's proportionate share of expenses incurred in
[Plaintiff's] case."  (Defs.' Mot. App. 12.)

Trover's response, on or about August 4, 2008, included a consolidated statement
showing that the Plan had provided Plaintiff with benefits in the amount of $4,078.42.  (Defs.'
Mot. App. 15-18.)  The letter also stated that as a self-funded plan governed by ERISA, "any
recovery language in the Plan is generally enforceable as written."  (*Id*.)  Therefore, the Plan
"has the right to be reimbursed for benefits it has provided in the event that any compensation is
received from another source."  (*Id*.; *see* Sec. Am. Compl. ¶ 75(a).)

On or about January 15, 2009, Gillman responded to Trover stating that the Plan's
subrogation interest had been noted, but that "we have not been provided with proof that the

[P]lan is entitled to reimbursement." (Defs.' Mot. App. 20.) Gillman again requested "the appropriate proofs." (*Id*.) Trover responded on or about January 20, 2009, and enclosed a copy of the Plan's benefit booklet ("Benefit Booklet"). (Defs.' Mot. App. 21.) The Benefit Booklet provides, in pertinent part:

> You or your covered Dependent shall pay the Claims Administrator all amounts recovered by suit, settlement, or otherwise from any third party or his insurer to the extent of the benefits provided or paid under this Claims Administrator and as permitted by law[.]
> The Claims Administrator's right of subrogation shall be unenforceable when prohibited by law[.]

(Sec. Am. Comp. Ex. A; Benefit Booklet 3 2-63, Defs.' Mot. App. 88.) The Benefit Booklet also sets forth the complaint and appeals process for Plan members. (Benefit Booklet  3 2-74.) Members who wish to register a complaint are instructed to "call the Member Services Department number at the telephone number on the back of their identification card or write to the Claims Administrator [at the address provided]." (*Id*.) Members may also pursue an appeal by calling or writing the Claims Administrator within 180 days of an adverse benefit determination and requesting a change of the previous decision. (*Id*.) The two types of member appeals described in the Benefit Booklet are "Medical Necessity Appeal Issues" and "Administrative Appeal Issues." (*Id*.)

Gillman responded by letter on or about April 16, 2009, and informed Trover that "the health insurance subrogation lien of $4,078.42 has been noted and we will contact you at the conclusion of [Plaintiff's] case to discuss repayment arrangements." (Apr. 16, 2009 Gillman Ltr., Defs.' Mot. App. 104.) Gillman sent Trover a letter seeking confirmation of the lien amount on or about June 26, 2009. (Defs.' Mot. App. 105.) Trover responded by letters on December 7, 2009 and December 15, 2009. (Defs.' Mot. App. 106-113.)

On or about December 15, 2009, Gillman offered Trover 50% of the lien amount as repayment in full.  (Defs.' Mot. App. 114.)  On December 17, 2009, Plaintiff settled the negligence lawsuit.  (Defs.' Mot. App. 10.)  On or about February 1, 2010, Gillman made an offer to Trover to repay two-thirds of the lien amount.  (Defs.' Mot. App. 119.)  Trover rejected the offer by telephone.  (Defs.' Mot 8.)

On or about February 11, 2010, Gillman sent a letter to Trover stating that IBX had failed to provide any documentation in support of its claim that the Plan is self-funded and that the Benefit Booklet was insufficient to support the Plan's subrogation rights.  (Feb. 11, 2010 Gillman Ltr., Defs.' Mot. App. 120-125.)  The letter acknowledged a telephone conversation in which Trover stated that "it was not [their] responsibility to obtain and provide the requested proofs entitling [IBX] to subrogation," that Plaintiff "should have written directly to the Plan for this information," and that "the address of the Plan to which [Plaintiff's] request should have been directed was contained in [Trover's January 20th Letter]."  (Defs.' Mot. App. 124-25.)

On or about March 17, 2010, March 31, 2010, and April 14, 2010, Trover sent letters directly to Plaintiff requesting reimbursement for benefits provided.  (Defs.' Mot. App. 126-28; *see* Sec. Am. Compl. ¶ 75(c).)  On or about May 5, 2010, Gillman submitted a draft in the amount of $4,078.42 representing payment of the disputed lien, although he advised Plaintiff that he did not believe that the lien was valid.  (Defs.' Mot. App. 129.)

### B.     Procedural History

On January 20, 2011, Plaintiff filed this lawsuit on behalf of herself and all others similarly situated.  (ECF No. 1.)  On June 3, 2011, Plaintiff filed a Second Amended Complaint.  (Sec. Am. Compl.)  Plaintiff brings this ERISA class action alleging claims for declaratory and/or injunctive relief pursuant to ERISA sections 502(a)(1) and 502(a)(3) (Count I), violations of the

4

Fair Debt Collection Practices Act and the Pennsylvania Debt Collection Laws (Count II),

tortious interference with contract (Count III), breach of fiduciary duty (Count IV), and unjust

enrichment (Count V).  (*Id.*)[2]

On June 24, 2011, Defendants filed this Motion to Dismiss or, Alternatively, for

Summary Judgment.  (Defs.' Mot.)  On August 12, 2011, Plaintiff filed a Response in

opposition.  (Pl.'s Resp.)  On September 15, 2011, Defendants filed a Reply.  (Defs.' Reply, ECF

No. 25.)  On September 26, 2011, Plaintiff filed a Sur-Reply.  (Pl.'s Sur-Reply, ECF No. 29.)

On October 17, 2011, Defendants filed a Third Brief in support of their Motion.  (ECF No. 32.)

On May 1, 2013, Defendants filed a motion for leave to file notice of supplemental authority.

(ECF No. 34.)  On May 9, 2013, Plaintiff filed a response.  (ECF No. 37.)  On May 24, 2013, we

granted Defendants' Motion to file a notice of supplemental authority.  (ECF No. 38.)

## II.    LEGAL STANDARD

Defendants move to dismiss the Second Amended Complaint under Federal Rule of Civil

Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56.[3]  Under Federal

Rule 8(a)(2), "[a] pleading that states a claim for relief must contain a short and plain statement

---

[2] Plaintiff has voluntarily dismissed Counts II, III, IV, and V.  (ECF No. 40.)

[3] When extrinsic documents are "presented to and not excluded by the court, the [12(b)(6)] motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  However, when considering a motion to dismiss, the district court may consider documents that are attached to the complaint as well as "undisputedly authentic document[s] that a defendant attaches as . . . exhibit[s] to a motion to dismiss if the plaintiff's claims are based on th[ose] document[s]."  *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  Courts may also consider "matters incorporated by reference."  *Siwulec v. J.M. Adjustment Servs., LLC*, 465 F. App'x 200, 202 (3d Cir. 2012) (quotation omitted).  The documents relied upon by Defendants in this case are both referenced in Plaintiff's Complaint and integral to her claim.  *See Smith v. Pallman*, 420 F. App'x 208, 213 (3d Cir. 2011) (finding that the district court properly considered letters attached to the defendant's motion to dismiss because the letters established that the plaintiff had failed to exhaust her administrative remedies).  Thus, we will rule upon Defendants' Motion under Federal Rule 12(b)(6).

of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6)

provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon

which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A motion under Rule 12(b)(6),

therefore, tests the sufficiency of the complaint against the pleading requirements of Rule 8(a).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint that merely

alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed.  *See*

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  Courts need not accept

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements . . . ."  *Iqbal*, 556 U.S. at 678.  "While legal conclusions can provide the framework of

a complaint, they must be supported by factual allegations."  *Id*. at 679.  This "'does not impose

a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to

raise a reasonable expectation that discovery will reveal evidence of' the necessary element."

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at

556).

      In determining whether dismissal of the complaint is appropriate, courts use a two-part

analysis.  *Fowler*, 578 F.3d at 210.  First, courts separate the factual and legal elements of the

claim and accept all of the complaint's well-pleaded facts as true.  *Id*. at 210-11.  Next, courts

determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a

"'plausible claim for relief.'"  *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).  Given the nature of

the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will

. . . be a context-specific task that requires the reviewing court to draw on its judicial experience

and common sense.'"  *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## III.   DISCUSSION

Plaintiff argues that Defendants have no valid subrogation rights under the Plan.  (Sec. Am. Compl. ¶ 5.)  Specifically, Plaintiff contends that the Plan is subject to Pennsylvania's Motor Vehicle Financial Responsibility Law, 75 Pa. Cons. Stat. § 1720 (the "MVFRL"), which prohibits subrogation claims in motor vehicle accidents.  (*Id*.)  Plaintiff alleges that Defendants falsely represented the Plan's status as self-funded in an effort to evade the MVFRL.  (*Id*.)[4]  In the alternative, Plaintiff argues that even if the Plan is self-funded, its terms are "self-limiting" and expressly subordinate the Plan's subrogation rights to the MVFRL.  (Sec. Am. Compl. ¶ 8.)  Finally, Plaintiff maintains that even if the Plan is entitled to subrogation, its recovery is subject to equitable limitation under the "make whole" and "common fund" doctrines.  (*Id*. at ¶¶ 8, 69, 77, 78.)

Defendants argue that Plaintiff failed to exhaust the Plan's administrative remedies and that, as a result, her Complaint must be dismissed.  (Defs.' Mot. 2.)  In addition, Defendants contest Plaintiff's claim that the Plan explicitly subordinates its subrogation rights to the MVFRL.  (*Id*. at 3.)  Instead, Defendants argue that because the Plan is self-funded, the MVFRL is pre-empted by ERISA, and Plaintiff's claim fails as a matter of law.  (*Id*.)

---

[4] A self-funded plan "does not purchase an insurance policy from any insurance company in order to satisfy its obligations to its participants."  *FMC Corp v. Holliday*, 498 U.S. 52, 54 (1990).  Such plans are not subject to Pennsylvania's MVFRL.  *Id*. at 65.  "On the other hand, employee benefit plans that are insured are subject to indirect state insurance regulation," such as Pennsylvania's MVFRL.  *Id*. at 61.

A.     **Exhaustion**

1.     *Claim for Benefits*

Defendants argue that subrogation disputes are subject to the exhaustion doctrine and that because Plaintiff failed to comply with the Plan's administrative remedies, her Complaint should be dismissed.  (*Id*. at 19-21.)  Plaintiff counters that "the claims in this case are not the type of claims to which the 'exhaustion' doctrine applies."  (Pl.'s Resp. 10.)  Specifically, Plaintiff argues that the exhaustion of administrative remedies "is ***only required if the claim is for denied benefits***."  (*Id*. (emphasis in original).)  Where "the claims asserted are independent of a claim for benefits, a plaintiff is *not* required to exhaust administrative remedies."  (*Id*. (emphasis in original).)

The exhaustion doctrine is not referenced within the statutory provisions of ERISA. *Metro. Life. Ins. Co. v. Price*, 501 F.3d 271, 279 (3d Cir. 2007).  Rather, "[i]t is a judicial innovation fashioned with an eye toward sound policy."  *Id*. (internal quotation marks omitted). Its purpose is to "reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned."  *Harrow v. Prudential Ins. Co. of Am*., 279 F.3d 244, 249 (3d Cir. 2002) (internal quotation marks omitted). It is well established that the exhaustion doctrine applies to benefit claims under ERISA, *id*. at 252, and that in the context of a class action, the named plaintiff must establish that she has exhausted her administrative remedies, *see Thomas v. SmithKline Beechman Corp*., 201 F.R.D. 386, 395 (E.D. Pa. 2001); *Matz v. Household Int'l Tax Reduction Inv. Plan*, 232 F.R.D. 593, 597 (N.D. Ill. 2005); *Williams v. Rohm & Haas Pension Plan*, No. 02-123, 2003 WL 22271111, at *4-5 (S.D. Ind. Sept. 26, 2003).  However, exhaustion is not required where the claimant seeks

"to assert rights established by the ERISA statute."  *D'Amico v. CBS Corp*., 297 F.3d 287, 291 (3d Cir. 2002).[5]

The question of whether subrogation disputes are subject to the exhaustion doctrine was addressed in *Kesselman v. Rawlings Co., LLC*, 668 F. Supp. 2d 604 (S.D.N.Y 2009).  The plaintiffs in that putative class action were individuals who had been injured in car accidents and who had a portion of their medical bills paid by their health plans.  *Id*. at 605-06.  Following the accidents, the plaintiffs recovered damages from the negligent drivers and "were subjected to claims for reimbursement by the [d]efendants."  *Id*. at 606.  After making payment to a subrogation agent, one of the plaintiffs filed a lawsuit seeking reimbursement of her benefits.  *Id*. at 607-08.  The plaintiff also sought a declaratory judgment finding that ERISA laws prohibit benefit plans from pursuing reimbursements from plaintiffs' third-party personal injury settlements.  *Id*. at 609-10.  The court granted the defendants' motion to dismiss after concluding that the plaintiff had failed to exhaust her plan's administrative remedies.  *Id*.; *see also Wurtz v. Rawlings Co*., *LLC*, 933 F. Supp. 2d 480, 507-08 (E.D.N.Y. 2013) (questioning whether the plaintiffs, whose ERISA claims were based upon subrogation disputes, had exhausted their administrative remedies).

---

[5] Exceptions to this generally fall into two categories:  "(1) discrimination claims under § 510 of ERISA, or (2) failure to provide plaintiffs with summary plan descriptions, as required by ERISA."  *Harrow*, 279 F.3d at 253 (internal quotation marks omitted).  Claims for breach of fiduciary duty, under sections 404-406 of ERISA, might also fall within this exception because they are statutory in nature.  *Id.*  However, "[p]laintiffs cannot circumvent the exhaustion requirement by artfully pleading benefit claims as breach of fiduciary duty claims."  *Id.*  Thus, the exhaustion doctrine will apply unless the facts alleged "present a breach of fiduciary duty claim that is independent of a claim for benefits . . . ."  *Id.*; *see also D'Amico*, 297 F.3d at 291 ("[W]e still require exhaustion in cases where the alleged statutory violation - a breach of fiduciary duty under section 404 - is actually a claim based on denial of benefits under the terms of a plan.").  Although Plaintiff originally claimed that Defendants breached their fiduciary duties under section 404(a) of ERISA, that claim has since been withdrawn.

Plaintiff attempts to distinguish the court's decision in *Kesselman* by arguing that the Second Circuit does not recognize a distinction between claims for benefits and claims to enforce rights conferred by statute.  (Pl.'s Sur-Reply 2.)  However, this distinction is of little consequence given the Third Circuit's decision in *Levine v. United Healthcare Corp.*, 402 F.3d 156 (3d Cir. 2005).  In *Levine*, the Court held that "[w]here . . . plaintiffs claim that their ERISA plan wrongfully sought reimbursement of previously paid health benefits, the claim is for 'benefits due' . . . ."  *Id.* at 163.  This holding was reaffirmed by the Third Circuit in *Wirth v. Aetna U.S. Healthcare*, 469 F.3d 305 (3d Cir. 2006).  In *Wirth*, the plaintiff's health plan pursued a subrogation lien to recover monies that the plaintiff received from a third party negligence action.  *Id.* at 306-307.  The plaintiff made a payment to the plan to release its lien and then filed a lawsuit claiming that the lien was in violation of the MVFRL.  *Id.* at 307.  On appeal, the Third Circuit determined that *Levine* precluded the plaintiff's argument that his claim was "not tantamount to seeking recovery of 'benefits due' to him."  *Id.* at 309.[6]

We are not persuaded by Plaintiff's argument that *Wirth* and *Levine* are inapplicable because they arose from jurisdictional disputes and did not address the issue of exhaustion.  The Third Circuit's language leaves little doubt that subrogation disputes are claims for benefits due. As such, Plaintiff was required to exhaust her Plan's administrative remedies prior to initiating

---

[6] The reasoning of the Third Circuit in *Levine* and *Wirth* is consistent with that of the Fourth and Fifth Circuits.  *See Singh v. Prudential Health Care Plan Inc.*, 335 F.3d 278, 291 (4th Cir. 2003); *Arana v. Ochsner*, 338 F.3d 433, 437 (5th Cir. 2003).  In *Singh*, the Court explained:

> [A] claimant who is denied a benefit is no different than a claimant who is faced with an invoice from the insurer for the return of a benefit paid or a claimant who has paid such an invoice, because resolution in each case requires a court to determine entitlement to a benefit *under the lawfully applied terms* of an ERISA plan.

*Singh*, 335 F.3d at 291 (emphasis in original).

this lawsuit.  This view is shared by a number of courts that have addressed the issue under the same or similar circumstances.  *Wurtz*, 933 F. Supp. 2d at 507-08; *Kesselman*, 668 F. Supp. 2d at 609; *see Barnes v. Humana*, Inc., No. 13-68, 2013 WL 4434391, at *2 (W.D. Mo. Aug. 14, 2013) (finding that subrogation dispute was a claim for benefits under the Federal Employee's Health Benefits Act and dismissing the plaintiff's claim because he failed to exhaust his administrative remedies*); see also Potts v. Rawlings Co*., *LLC*, 897 F. Supp. 2d 185, 193 (S.D.N.Y. 2012) (collecting cases in which courts have held that subrogation disputes under the Medicare Secondary Payer Act must be exhausted at the administrative level).

2. *Notice of Adverse Benefit Determination and Administrative Appeal Procedure*

Plaintiff argues that even if the exhaustion doctrine does apply, she was never informed of an adverse benefit determination as required by ERISA.  (Pl.'s Resp. 13.)  Specifically, Plaintiff claims that she never received any correspondence relating to the subrogation claim from QCC and that the communications from Trover did not contain any of the information required by ERISA.  (*Id*. at 14.)  In addition, Plaintiff argues "that there was no administrative process or remedy *available* to her with which to resolve subrogation disputes with an outside vendor such as Trover."  (*Id*. at 10 (emphasis in original).)

"ERISA requires that every employee benefit plan 'provide adequate notice in writing to any participant . . . whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant.'"  *Brown v. First Reliance Standard Life Ins. Co*., No. 10-486, 2011 WL 1044664, at *8 (W.D. Pa. Mar. 18, 2011) (quoting 29 U.S.C. § 1133(1)).  Specifically, the notification must set forth:

(i) The specific reason or reasons for the adverse determination;
(ii) Reference to the specific plan provisions on which the determination is based;
(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review[.]

29 C.F.R. § 2560.503-1(g)(i)-(iv).  Courts in the Third Circuit have found that notice can be sufficient if it "is 'in substantial compliance with the governing regulation.'"  *Morningred v. Delta Family-Care & Survivorship Plan*, 790 F. Supp. 2d 177, 194 (D. Del. 2011) *aff'd,* 526 F. App'x 217 (3d Cir. 2013) (quoting *Brown*, 2011 WL 1044664, at *9).  Substantial compliance is achieved when the denial letter sets forth a "'sufficiently clear understanding of the administrator's position to permit effective review.'"  *Id.* (quoting *Brogan v. Holland*, 105 F.3d 158, 165 (4th Cir. 1997)).  "[C]ourts may 'consider all communications' between the parties 'to determine whether the information provided was sufficient under the circumstances.'"  *Sutley v. Int'l Paper Co.*, No. 07-105, 2009 WL 703555, at *13 n.11 (W.D. Pa. Mar. 16, 2009) (quoting *Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 436 (6th Cir. 2006)).

Trover's October 11, 2007 letter to Gillman notified Plaintiff of an adverse benefit determination.  *See Medlar v. Regence Grp.*, No. 04-2762, 2005 WL 1241881, at *3, 8 (E.D. Pa. May 23, 2005) (finding that the plaintiff's receipt of a trust agreement granting the plaintiff's insurer a right to subrogation was "the action giving rise to the grievance").  The letter explained that the Plan was entitled to pursue subrogation and that this right was based upon the Plan's self-funded status under ERISA.  On January 20, 2009, Trover sent Gillman a copy of the Benefit Booklet, which set forth the subrogation rights of the Claims Administrator.  The Benefit Booklet also described the procedures that members must follow when pursuing an

administrative appeal and the deadline by which these procedures must be completed.  Plaintiff

concedes that the Plan's Administrative Appeals Procedure governs claims for benefits.  (Pl.'s

Resp. 14; *see* Benefit Booklet 3 2-74.)  Considering all of the communications between Trover

and Gillman, we find that there was an appeals process available and that Plaintiff was provided

with a "sufficiently clear understanding of the administrator's position to permit effective

review."  *Morningred*, 790 F. Supp. 2d at 194; *see Zarringhalam v. United Food & Commercial*

*Workers Int'l Union Local 1500 Welfare Fund,* 906 F. Supp. 2d 140, 153-54 (E.D.N.Y. 2012)

(finding that the plaintiff could not claim that "the [f]und failed to adequately notify him of its

available administrative remedies" where the fund sent the plaintiff a summary plan description

outlining the appeals process); *see also Zahl v. Local 641 Teamsters Welfare Fund*, No. 09-1100,

2010 WL 3724520, at *3 (D.N.J. Sept. 14, 2010) (finding that even if the plaintiff did not receive

a denial letter, the appeal procedures were set forth in the plan document).

    We reject Plaintiff's argument that Gillman's communications to Trover satisfied

Plaintiff's exhaustion requirement.  (Pl.'s Sur-Reply 4.)  The case cited by Plaintiff in support of

this argument, *Medlar*, 2005 WL 1241881, at *1, is easily distinguished.  In *Medlar*, the

defendant required the plaintiffs to sign an agreement that granted the defendant a right to

subrogation.  *Id*.  The agreement was forwarded to the plaintiffs from the defendants subrogation

department.  *Id*. at *3.  The plaintiffs responded within two months by sending two objection

letters to the subrogation department.  *Id*.  The plaintiffs then initiated a lawsuit seeking a

declaratory judgment that their health insurance policy was subject to the MVFRL.  *Id*. at *1.  In

denying the defendant's motion to dismiss, the court rejected the argument that the plaintiffs had

failed to exhaust their administrative remedies by addressing their letters to the wrong

department within the defendant's company.  *Id*. at *3.  The Court determined that it was

reasonable for the plaintiffs to direct their objections to the same department that had forwarded them the trust agreement.  *Id*.  The court further explained that it would not fault the plaintiffs for failing to direct their complaint to an appellate unit that was never mentioned in the plan's procedures.  *Id*.

Unlike *Medlar*, Plaintiff did not object to Defendants' subrogation lien.  Instead, Plaintiff requested proof of the Plan's self-funded status.  Plaintiff did not object after receiving a copy of the Benefit Booklet, which provided the procedural steps and contact information necessary for an appeal.  Nor does Plaintiff allege that she made any subsequent requests for additional proof of the Plan's self-funded status.  Instead, Plaintiff informed Trover that "[t]he health insurance subrogation lien of $4,078.42 has been noted and we will contact you at the conclusion of [Plaintiff's] case to discuss repayment arrangements."  (Apr. 16 Gillman Ltr.)  Plaintiff then sent Trover two letters offering partial repayment of the lien before ultimately submitting full payment.  It was not until February 11, 2010, nearly two-and-a-half years after being contacted by Trover and over a year after receiving the Benefit Booklet, that Gillman informed Trover of his belief "that the Plan has no enforceable subrogation rights."  (Feb. 11 Gillman Ltr.)  Plaintiff did not file a complaint, objection, or appeal within the Plan's limitations period.  Clearly, Plaintiff failed to exhaust her administrative remedies.  *See Kesselman*, 668 F. Supp. 2d at 609 (rejecting the plaintiff's argument that counsel's letters "disputing the claims and citing legal authority and requesting documentation from said [d]efendants to justify the claims should be considered sufficient exhaustion of remedies") (internal quotation marks omitted).[7]

---

[7] Plaintiff argues that "[n]either QCC nor Trover (nor, indeed, the [Plan's Administrator]) ever provided any Form 5500s or other financial disclosures, since those disclosures - required under ERISA and executed under penalty of perjury - did not support their subrogation claim." (Pl.'s Sur-Reply 4.)  Accepting this assertion as true, it is insufficient to support Plaintiff's claim that she exhausted her administrative remedies.  Although 29 U.S.C. § 1024(b)(4) imposes a duty

3.     *Futility*

Plaintiff argues that even if her subrogation dispute is subject to the exhaustion doctrine, Defendants' "fixed and inflexible policy with respect to subrogation claims . . . would have rendered any administrative appeal futile." (Sec. Am. Compl. ¶ 94; Pl.'s Resp. 15.)  Specifically, Plaintiff cites the following provision from the Plan's Administrative Services Agreement ("ASA"):

> Except as set forth in the Benefit Program, the Claims Administrator will not apply any state law that, in its view, relates to the Benefit Program, regulates insurance, affects self-insured plans, and mandates that self-insured plans provide certain benefits to persons insured by the plans.

(Pl.'s Resp. 16; Defs.' Mot. App. 301.)  Given this language, Plaintiff argues that any challenge to the Plan's subrogation rights under the MVFRL was predetermined as a matter of policy. (Pl.'s Resp. 16.)  Defendants counter that the ASA provision cited by Plaintiff "is hardly a 'fixed' policy concerning subrogation claims." (Defs.' Reply 8.)  Rather, "it is nothing more than an observation that the Claims Administrator will not apply state laws that, *in its view*, do not apply to self-funded plans (such as laws that regulate insurance) to the Plan."  (*Id*. at 8 (emphasis in original).)  Defendants also argue that Plaintiff's futility argument is inconsistent with her position that Defendants' actions were in violation of Pennsylvania law and established Supreme Court precedent.  (*Id*. at 23.)

"Although the exhaustion requirement is strictly enforced, courts have recognized an exception when resort to the administrative process would be futile."  *Berger v. Edgewater Steel Co*., 911 F.2d 911, 916 (3d Cir. 1990).  To "merit waiver of the exhaustion requirement,"

---

upon plan administrators to provide participants with certain information upon request, neither Trover nor QCC is the Plan Administrator.  29 U.S.C. § 1024(b)(4).  Moreover, Plaintiff has made clear that her claims in this lawsuit "are not dependent on the source of funding for her plan."  (Pl.'s Resp 3, 6; Pl.'s Sur-Reply 5.)

plaintiffs must set forth a "clear and positive showing of futility." *Harrow*, 279 F.3d at 249

(quotation omitted). Courts weigh several factors in determining whether to excuse exhaustion

on futility grounds. Those factors include:

> (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff
> acted reasonably in seeking immediate judicial review under the circumstances;
> (3) existence of a fixed policy denying benefits; (4) failure of the insurance
> company to comply with its own internal administrative procedures; and (5)
> testimony of plan administrators that any administrative appeal was futile.

*Id*. at 250. These factors need not be weighed equally in evaluating whether pursuit of

administrative remedies would have been futile. *Id*.

Plaintiff's futility argument is based solely upon the fixed policy factor set forth in

*Harrow*. Similar arguments have been rejected by courts under comparable circumstances. In

*Gatti v. W. Pa. Teamsters & Emp'rs Welfare Fund*, No. 07-1178, 2008 WL 794516, at *2 (W.D.

Pa. 2008), the plaintiff was involved in a motor vehicle accident and sought benefits from his

health plan. The plan declined to pay the requested benefits because the plaintiff refused to sign

a subrogation agreement. *Id*. Counsel for the fund sent a letter to the plaintiff's attorney stating

that the fund was confident that it had the right to subrogation, "pursuant to the language of the

plan." *Id*. Based upon that letter, the plaintiff's attorney determined that an appeals hearing

would be a "sham" and instead filed a lawsuit. *Id*. at *3. The court held that because the

plaintiff had failed to submit evidence of a fixed policy, he could not establish futility and

therefore granted the defendant's motion for judgment on the pleadings. *Id*. at *5.

Similarly, the plaintiff in *Barnes* relied upon a letter that instructed his insurer to "pursue

reimbursement without regard to a state's anti-subrogation law." *Barnes*, 2013 WL 4434391, at

*4. The letter also stated that this position would be maintained in the future. *Id*. In granting the

defendant's motion to dismiss, the court concluded that the defendant's position that "federal

regulations and the [p]lan require[d] subrogation [was] not enough to demonstrate futility." *Id.*; *see also Wurtz*, 933 F. Supp. 2d at 508 (granting the defendant's motion to dismiss where the plaintiff argued that the defendant would have ignored New York's anti-subrogation law even if the plaintiff had brought it to the defendant's attention).

The Plan's policy with respect to subrogation claims is less fixed than in *Barnes* and *Gatti*. The directives set forth in the ASA are made expressly contingent upon any instructions set forth by the Plan. In fact, the Plan limits its subrogation rights by stating that such rights "shall be unenforceable when prohibited by law." (Benefit Booklet 3 2-63.) This fact is not only acknowledged by Plaintiff, it serves as the very basis of her Complaint. (Sec. Am. Comp. ¶¶ 5, 6, 8, 35, 36, 37, 40, 64, 70; Pl.'s Resp. 16 n.8.) Specifically, Plaintiff argues that the language contained within the Benefit Booklet "is self-limiting" and expressly subordinates the Plan's subrogation rights to the MVFRL, as well as Pennsylvania's "make whole" and "common fund doctrines." (Sec. Am. Compl. ¶¶ 8, 69, 77.) This argument is not supportive of Plaintiff's claim that the Plan has a fixed and inflexible policy with respect to subrogation claims. Moreover, as in *Wurtz*, any claim that Defendants would have ignored the MVFRL is insufficient to establish futility.

Furthermore, even if the Plan did have a fixed and inflexible policy, courts are reluctant to apply the futility exception where plaintiffs fail to make a request for benefits. *Churchill v. Cigna Corp.*, No. 10-6911, 2011 WL 3563489, at *7 (E.D. Pa. Aug. 12, 2011) ("The Third Circuit has denied use of the futility exception, however, when an ERISA plaintiff did not request the contested benefit, even when the plan has a blanket policy of denying all such requests."); *see also Balmat v. Certain Teed Corp.*, No. 04-2505, 2004 WL 2861873, at *3 (E.D. Pa. Dec. 9, 2004) (rejecting the plaintiff's claim of futility where the plaintiff "without ever

17

trying to engage the administrative appeals process, simply cite[d] a section of the [p]lan and claim[ed] that it establishe[d] a fixed policy without providing any example or further explanation").  In the instant case, Plaintiff did not make a request for benefits within 180 days of receiving notice of the adverse benefit determination as required by the Plan.  Although Plaintiff initially requested additional proof in support of the Plan's right to subrogation, she later acknowledged the lien, made two offers of partial repayment, and ultimately instructed Gillman to satisfy the lien in full.  Plaintiff did not object until nearly a year and a half after receiving a copy of the Benefit Booklet.  Given Plaintiff's failure to file a request for benefits and failure to engage in the administrative appeals process, we decline to apply the futility exception.  *See D'Amico*, 297 F.3d at 293 ("Plaintiffs who fail to make known their desire for benefits to a responsible company official are precluded from seeking judicial relief.").

## IV.    CONCLUSION

For the foregoing reasons, the Motion to Dismiss of Defendants' Independence Blue Cross, QCC, and Trover Solutions will be granted.

An appropriate Order follows.

BY THE COURT:

_____

**R. BARCLAY SURRICK, J.**